The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RACHEL A. PRICE, an individual; and TESSA V. GEHARDT, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> EQUILON ENTERPRISES LLC, d/b/a SHELL OIL PRODUCTS US, a Delaware Limited Liability Company, <br><br> Defendant. | NO. 17-cv-01337 MJP <br><br> AGREED PROTOCOL REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION (ESI) AND ORDER |

## I. **DEFINITIONS**

**"Electronically stored information"** or **"ESI,"** as used herein, refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media.

## II. **ESI DISCLOSURES**

Within 30 days of filing the Joint Status Report, or at a later time if agreed to by the parties, each party shall disclose:

AGREED PROTOCOL REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION (ESI)
AND ORDER - 1
6355584.1

1. <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of information under his/her control.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (e.g. shared drives, servers, etc.) if any, likely to contain discoverable ESI. To the extent non-custodian sources includes a database, in lieu of producing the database, the parties shall meet and confer to seek an agreement upon a set of terms or queries to be made for discoverable information and generate a report in a usable and exportable electronic file (e.g., Excel or CSV format) for review by the Requesting Party or counsel. Upon review of the report(s), the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, and formats or to request specific data from identified fields. The parties agree to confer regarding terms and queries of non-custodial Data Sources within ten days of receiving the discovery requests.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain unique discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i). If a Producing Party asserts that certain ESI is inaccessible or otherwise unresponsive to discovery requests, or if the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer, the issue shall be presented to the Court for resolution.

# III. PRESERVATION OF ESI

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the Requesting Party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

2. All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure.

3. Absent a showing of good cause by the Requesting Party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible through a forensic recovery process, defined as the re-creation of files, data, and or caches that no longer exist that require the assistance of outside forensic experts.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section VI.3).

   e. Back-up data that are duplicative of data that are accessible elsewhere.

   f. Server, system or network logs.

   g. Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), *provided* that a copy of all such electronic data is saved elsewhere in a format that can be produced (such as on a server, laptop, desktop computer, or "cloud" storage).

## IV. **PRIVILEGE**

1. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

2. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

3. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the Producing Party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced or (ii) the Producing Party provides notice within 15 days of discovery by the Producing Party of the inadvertent production.

4. Neither the attorney-client privilege nor the work product protection is waived by disclosure connected with this litigation. The production of privileged or work product protected documents, electronically stored information, or other information is not a general waiver of the privilege or protection in this case or in any other federal or state proceeding. If any privileged or work product protected documents are produced, the Receiving Party shall, at the request of the Producing Party, promptly return such documents (and all copies thereof), including all later created excerpts, summaries, compilations, and other documents or records that include, communicate, or reveal the information claimed to be privileged or protected. A Receiving Party who receives a document that it knows or reasonably should know is privileged shall notify the Producing Party. This Order shall be interpreted to provide the maximum protection allowed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, specifically including Rule 502(d).

5. <u>Privilege Logs and E-Mails.</u> An email for which a Party claims a privileged communication(s) may be logged in a single entry. Duplicative emails containing the same

1 privileged communications suppressed under paragraph VI.3 below need not be reflected on the Party's privilege log.

## V. ESI DISCOVERY PROCEDURES

Search methodology. The Parties will cooperate regarding the disclosure and formulation of appropriate search terms in advance of any search to collect ESI. With the objective of limiting the scope of review and production, and thereby reducing discovery burdens, the parties shall meet and confer within ten days of receiving Requests for Production of Documents that will likely require production of ESI, and in advance of any Producing Party search commencement, to discuss:

  a. Search term development: The Producing Party shall disclose the search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information and disclose all semantic synonyms to the requested search terms. Semantic synonyms shall mean without limitation code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to relevant ESI. The parties shall meet and confer to reach an agreement on the Producing Party's search terms and/or other methodology.

  b. Terms and Queries: Focused terms and queries should be employed; broad terms or queries, such as locations and company names, generally should be avoided. Whenever a Producing Party finds that the volume of search results for a particular search term is likely overbroad, the Producing Party will provide notice to the Requesting Party. The Parties agree to meet and confer to discuss methods for refining the search before documents are produced.

  c. Data Sources: The Producing Party shall search both non-custodial data sources and ESI maintained by the custodians identified above.

## VI. **FORMAT OF PRODUCTION**

1. Format. The parties agree that ESI will be produced to the Requesting Party in native format with corresponding TIFFs and searchable text. Searchable PDFs will be produced only where native files and TIFFs are not available. Files that are not easily converted to image format, such as spreadsheet, database and drawing files, should be produced in native format.

2. De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the Requesting Party.

3. Metadata fields. If the Requesting Party seeks metadata, the parties agree that only the following metadata fields need be produced: document type; custodian; author/from; recipient/to, cc and bcc; title/subject; file name and size; original file path; date and time created, sent, modified and/or received; and hash value

4. Document Unitization. For files not produced in their native format, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files.

5. Color. For files that cannot be produced in their native format, if an original document contains color, the Producing Party may produce black and white images. At the request of the receiving party, the parties shall meet and confer regarding production of color image(s) for specific documents.

6. Bates Numbering. Each document image file shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the page of the document in question, followed by its file extension). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where

applicable, the revision history. The parties shall produce their information in the following format: single- page images and associated multi-page text files containing extracted text and with appropriate software load files containing all requisite information for use with the document management system (e.g., Concordance® or Summation®), as utilized by the parties. Each page of a produced Document shall have a unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably conceal, or interfere with any information from the source document. Any Confidentiality legend shall be "burned" onto each document's image at a location that does not unreasonably obscure any information from the source document. Redacted documents will be so identified by electronically "burning" the legend "Redacted" onto each document's image at a location that does not unreasonably obscure any information from the source document.

7. <u>Native Format Documents.</u> All documents will be produced in native format with corresponding extracted text and TIFF. Documents not easily converted to TIFF such as MS Excel spreadsheets and MS Access Databases, as well as multimedia files (.wav, .mpg, etc.) will be produced natively with a corresponding placeholder displaying the Bates number associated with the produced file as well as the extracted text. If the native file is an industry or proprietary specific software (such as human resources and payroll software) or any other type of software not normally used in the normal course of general business, those files will be produced as a searchable PDF with a corresponding TIFF and extracted text. The Native Format version of such documents shall be titled with the following naming convention: "[Bates number] – [confidentiality designation] [original extension]".

8. <u>Extracted Text.</u> The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and

shall be named with a unique Bates Number (e.g. the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

## VII. **OBJECTIONS TO ESI PRODUCTION**

1. For files not produced in their native format, documents that present imaging or format production problems shall be promptly identified and disclosed to the Requesting Party; the parties shall then meet and confer to attempt to resolve the problems.

2. If either party objects to producing the requested information on the grounds that such information or production in the requested format is not reasonably accessible because of undue burden or cost, before asserting such an objection, the responding party will inform the Requesting Party of the format in which it is willing to produce it, the nature and location of the information claimed to not be reasonably accessible, the reason(s) the requested form of production would impose an undue burden or cost, and afford the Requesting Party 10 business days from receipt of such notice to propose an alternative means of production. Such proposal may include alternative cost estimates for ESI production, may offer a proposal for ESI cost allocation, or both. If the parties are not able to come to agreement regarding alternative means of production, the Producing Party must file a motion within 10 business days after the Requesting Party's response, articulating its position and relief requested. Failure to timely bring said motion may subject the Producing Party to sanction. Notwithstanding anything contained herein to the contrary, a Producing Party shall not produce ESI in a format that does not comply with the terms of this Order unless the parties have conferred and reached an agreement, or it has been subsequently ordered by the Court.

3. If a party believes that responsive ESI no longer exists in its original format, or is no longer retrievable, the Producing Party shall explain where and when it was last retrievable in its original format, and disclose the circumstances surrounding the change in status of that ESI, including the date of such status change, the person or persons responsible for such status

change, the reason or reasons such ESI is no longer retrievable in that format, and whether any backup or copy of such original ESI exists, together with the location and the custodian thereof.

DATED this 12th day of February, 2018.

| | |
|---|---|
| s/ Erin Pettigrew | s/ Sheryl J. Willert |
| s/ Daniel F. Johnson | s/ Jeffery M. Wells |
| Erin M. Pettigrew, WSBA #48773 | Sheryl J. Willert, WSBA #08617 |
| Daniel F. Johnson, WSBA #27848 | Jeffery M. Wells, WSBA #45840 |
| BRESKIN, JOHNSON, TOWNSEND | WILLIAMS, KASTNER & GIBBS PLLC |
| 1111 Third Avenue, Suite 2230 | 601 Union Street, Suite 4100 |
| Seattle, WA 98101 | Seattle, WA 98101-2380 |
| Phone: (206) 652-8660 | Phone: (206) 628-6600 |
| Fax: (206) 652-8290 | Fax: (206) 628-6611 |
| Email: epettigrew@bjtlegal.com | Email: swillert@williamskastner.com |
| djohnson@bjtlegal.com | jwells@williamskastner.com |
| Attorneys for Plaintiffs | Attorneys for Defendants |

AGREED PROTOCOL REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION (ESI)
AND ORDER - 9
6355584.1

# ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED: February 14, 2018

*Marsha J. Pechman*
Marsha J. Pechman
United States District Judge